**WYOMING VALLEY HEALTH CARE SYSTEMS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KALWAYTIS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 2, 2007.

Decided April 9, 2007.

James E. Pocius, Scranton, for petitioner.

Melissa J. Foley, Scranton, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Wyoming Valley Health Care Systems (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensa-

tion Judge's (WCJ) determination that Candida Kalwaytis (Claimant) was a partial dependent of her daughter Elisa Kalwaytis (Decedent) and entitled to death benefits under the Workers' Compensation Act (Act).[1]

On December 2, 2003, Decedent was fatally injured in a motor vehicle accident that occurred in the course and scope of her employment with Employer. Prior to the accident, Decedent had been residing with her mother, Claimant, and was working full-time for Employer since 1995 as a psychiatric social worker in the Luzerne County Prison. Her average weekly wage was $579.36. Claimant worked as an employment recruiter, earning $26,000 per year plus commissions. In 2003, she had earned $8,000 in commissions but had not received any in 2001, 2002 or 2004.[2] Claimant filed a fatal claim petition alleging that she was partially dependent on Decedent at the time of her death.[3]

Before the WCJ, Claimant testified that Decedent had lived with her in her apartment for which Claimant paid $400 per month in rent. She testified that at the time of the accident, Decedent had been financially contributing to expenses Claimant incurred and various expenses of the household, making an average donation of $125 every two weeks. Decedent paid for

cable television, the cost of maintaining the house, and Claimant's automobile and groceries on a bi-weekly basis. She also paid for non-household items such as a newspaper subscription, vacations, prescriptions, dining-out and movies. In total, her yearly contribution was approximately $3,120. With regard to her expenses, Claimant submitted a document demonstrating that her expenses in 2003 totaled $33,082.14 ($2,756.85 per month),[4] and her net income for that year was $25,977.46 ($2,164.79 per month), leaving her with a deficit of $7,104.68 ($592.06 per month). As part of her expenses, she acknowledged that a $33,000 balance had accrued on her credit cards. However, Claimant stated that this debt accumulated prior to December 2, 2003, resulting from the costs to raise Decedent, and that she took out a credit consolidation loan in the amount of $25,000 in order to refinance the debt. Claimant also admitted that Decedent neither claimed her as a "dependent" on her income tax return nor did she maintain any receipts documenting Decedent's contributions to her expenses.

Determining Claimant's testimony to be credible, the WCJ concluded that she was a partial dependent of Decedent at the time of her work-related death. He stated that the evidence revealed that prior to the

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

2. Claimant had not earned any commissions as of the date of the WCJ's hearing in 2004.

3. Section 307 of the Act, 77 P.S. § 561, provides in pertinent part:

   In case of death, compensation shall be computed on the following basis, and distributed to the following persons ... If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, if dependent to any extent upon the employe at the time of the injury, thirty-two per centum of wages but not in

excess of the Statewide average weekly wage.

4. The monthly expenses included: $400 for rent and $187.12 for utilities, which she solely paid in their entirety; $59.25 for renters' insurance; an average of $269 in medical expenses; an average of $298.65 in automobile expenses, not including the regular maintenance paid for by Decedent; $10 in bank charges; $665 in credit card and loan expenses which Claimant admitted had amassed over a long period for the costs associated with rearing Decedent; $769.16 on food, dry cleaning, clothing, hair care, gasoline and gifts; and $98.67 in charitable contributions.

accident, Decedent had resided with Claimant, with both Claimant and Decedent sharing household expenses, and Claimant relied on Decedent's financial contributions to "make ends meet." (Reproduced Record at 278a.) He also found that at the time of Decedent's death, Claimant's monthly expenses exceeded her income and that Decedent's "contributions were necessary for [Claimant] to maintain her lifestyle." *Id.* The WCJ granted Claimant's fatal claim petition and directed Employer to pay $185.40 per week in benefits beginning December 2, 2003, as well as $3,000 in funeral costs. Employer appealed to the Board, which affirmed, and this appeal followed.[5]

On appeal, Employer argues that the Board erred in affirming the WCJ's decision because no substantial evidence existed demonstrating that Claimant was a dependent of Decedent. It states that Claimant failed to meet her burden of proving dependency not only because she was gainfully employed before and after Decedent's death, but also because Decedent's contributions were essentially for her room and board. In addition, Employer contends that the amount associated with Claimant's credit card debt should not have been included in her computation of annual expenses because it did not represent an "ordinary necessity of life" for the purpose of determining dependency. Because it would affect our determination of whether Claimant's income exceeded her expenses if we were to conclude that payment of her credit card debt should not be part of Claimant's annual expense calculation, we address this issue first.

■ In the context of a workers' compensation claim, the test of dependency is whether or not the child's earnings were needed to provide the parents with some of the ordinary necessities of life suitable for persons in their class and position, and that the parents were, consequently, dependent to some extent upon the child at the time of the accident causing his or her death. *Lineal v. Workmen's Compensation Appeal Board (Essel)*, 542 Pa. 595, 669 A.2d 329 (1995). If the contribution of the deceased child was necessary to maintain the parents in an established reasonable standard of living, this existing standard must be considered in determining the necessity for such contribution from the child. *Id.*

In *Lineal,* the claimant filed a fatal claim petition in 1990 with the Bureau of Workers' Compensation seeking benefits based on the death of her son, who died as a result of work-related injuries. At the hearing on the petition, the claimant stated that her son had provided financial support since 1989 and introduced evidence of her income and expenses, which included monthly mortgage payments ranging from $193.79 to $387.58 for a vacation home-trailer purchased in 1987 for $13,500. The referee concluded that the claimant's monthly expenses exceeded her average monthly income and that her son contributed approximately $583 per month to his mother from January 1990 through September 1990. Her petition was granted, and the Board affirmed. We reversed the Board on appeal, holding that the cost of the claimant's vacation trailer-home was not an ordinary necessity of life and should have been excluded from the referee's calculation of expenses. In reversing our decision and reinstating the Board's order, the Supreme Court clarified the meaning

---

5. Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *City of Scranton v. Workers' Compensation Appeal Board (Roche)*, 909 A.2d 485 (Pa.Cmwlth.2006).

of "dependency" in the context of workers' compensation stating:

> In order to be eligible for compensation, the father or mother must "to any extent" be dependent upon the financial contributions of the deceased child. This means, simply, that when normal monthly bills extant at the time of the child's death are set off against normal monthly income of the parent, there is a deficit, absent the child's contribution. Further, in order to qualify as "dependent," these regular monthly expenditures must be reasonable in light of the life circumstances of the parent at the time of the child's death.

542 Pa. at 602, 669 A.2d at 332. Under that test, our Supreme Court held that the trailer's expense was a financial reality when the decedent had died, and that it was an expense appropriate to the claimant's life circumstances which was incurred when she believed it could be afforded.

▪ While Claimant had quite a sizable credit card debt, she testified that the balance had accumulated over a period of time by rearing her daughter rather than a large singular purchase, and the WCJ found this account to be credible.[6] In any event, Claimant's debt, no matter for what or when it was incurred, much like the mortgage payments in *Lineal*, was a financial reality existing at the time of Decedent's death. Claimant had incurred this debt over a period of years and expected that she could afford the obligation with the contributions made by Decedent. The fact that it accrued over time does not disqualify the credit card debt for the ne-

cessities of life any more than a mortgage on a vacation home from being included in monthly expenses, *see Swisher v. Workers' Compensation Appeal Board (Strick Corp., Orion Group)*, 791 A.2d 437 (Pa. Cmwlth.2001), and the WCJ did not err in considering the debt when calculating Claimant's expenses.

▪ Going on to the issue of dependency, citing *Regent Bottling Company v. Workmen's Compensation Appeal Board*, 10 Pa.Cmwlth. 8, 309 A.2d 265 (1973), and *WJAC, Inc. v. Workmen's Compensation Appeal Board*, 39 Pa.Cmwlth. 488, 395 A.2d 710 (1979), Employer contends that because Claimant was gainfully employed and that Decedent's contributions were merely compensation for room and board, she was not dependent "to any extent" on Decedent. While both of those cases held that a parent was not a partial dependent of their deceased child because the contributions made by the decedent were for room and board, in this case, the WCJ found that besides residing with her mother and sharing the cost of food, Decedent paid for the maintenance of her mother's automobile, her mother's prescriptions, and for certain entertainment costs that were ordinary to Claimant's lifestyle, all of which constitutes substantial evidence demonstrating that the contributions given to Claimant were more than her room and board. Moreover, Claimant's past work history and ability to work in the future had no bearing on her dependency status at the time of Decedent's death. *Haller v. Workmen's Compensation Appeal Board*, 153 Pa.Cmwlth. 149, 620 A.2d 657 (1993). Because there was a deficit between

---

6. The WCJ, as the ultimate fact-finder, is the sole arbiter of the credibility and weight of the evidence. A court cannot reweigh the evidence or substitute its judgment for the credibility determinations of the WCJ. The WCJ is free to accept or reject the testimony of any witness in whole or in part. *Wieczorkowski v. Workers' Compensation Appeal Board (LTV Steel)*, 871 A.2d 884 (Pa.Cmwlth. 2005).

Claimant's normal reasonable monthly expenses existing at Decedent's death when set off against Claimant's normal monthly income, Claimant established that she was partially dependent on Decedent and was eligible for benefits under Section 307 of the Act, 77 P.S. § 561.

Accordingly, the order of the Board is affirmed.

**ORDER**

AND NOW, this *9th* day of *April,* 2007, the Order of the Workers' Compensation Appeal Board, No. A05–0498, is affirmed.